NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1461

COMMONWEALTH

vs.

ANTHONY AUSTIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On December 20, 2021, the Commonwealth petitioned to have the defendant civilly committed to the Massachusetts Treatment Center pursuant to G. L. c. 123A, § 12 (e).  On July 12, 2022, after a one day jury-waived trial, a Superior Court judge found that the defendant was a sexually dangerous person and ordered that he be committed to the Massachusetts Treatment Center for a period of one day to life.[1]  On July 20, 2022, the defendant filed a timely notice of appeal and, on June 14, 2023, appellate proceedings were stayed pending the defendant's filing of a

_____

[1] The defendant was found incompetent to stand trial. However, "due process is not offended by proceedings to commit an incompetent person, represented by an attorney," pursuant to G. L. c. 123A.  Commonwealth v. Nieves, 446 Mass. 583, 585 (2006).

motion for a new trial. On March 15, 2024, the defendant filed a motion for a new trial. In his motion, the defendant contended that he received ineffective assistance of counsel because his trial counsel (1) failed to object to the admission of the "well above average" risk category label assigned to the defendant through the Static-99R,[2] and (2) failed to call an expert witness to testify regarding documented evidence favorable to the defendant's overall risk of sexually reoffending. On August 1, 2024, after a nonevidentiary hearing, the motion judge, who was also the trial judge, denied the defendant's motion.

In this consolidated appeal, the defendant challenges both the July 12, 2022 judgment and the denial of his motion for a new trial asserting ineffective assistance of counsel. Both appeals are grounded in counsel's failure to call an expert witness and failure to redact the Static-99R risk category labels. We affirm.

Discussion. A judge's decision on a motion for a new trial is reviewed for abuse of discretion or other significant error

---

[2] "The Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense." Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017).

of law. See Commonwealth v. Robinson, 480 Mass. 146, 149 (2018).

"Counsel is ineffective when his or her performance falls 'measurably below that which might be expected from an ordinarily fallible lawyer,' and the substandard performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Sullivan, 469 Mass. 621, 629 (2014), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was 'manifestly unreasonable' when made." Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

A defendant is sexually dangerous if "(1) the defendant was convicted of a sexual offense; (2) the defendant suffers from a mental abnormality or personality disorder; and (3) the defendant's mental abnormality or personality disorder makes him likely to engage in sexual offenses if not confined to a secure facility." Commonwealth v. Cahoon, 86 Mass. App. Ct. 266, 268 (2014), citing G. L. c. 123A, § 1.

1. Static-99R updated risk category labels. As noted supra, "[t]he Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual

3

offense." Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017). The Static-99R previously categorized a defendant as having "low," "low-moderate," "moderate-high," and "high" risk of sexual reoffense.[3] Id. at 340. However, the developers of the Static-99R acknowledged that the meaning of the previous risk category labels was "often unclear" and conceded that "the lack of clarity is exacerbated by the absence of accepted standards or metrics connecting the risk category labels to specific meanings, such as recidivism rates, psychological features, or expected treatment needs" (quotation and citation omitted). Id. In fact, the previous risk category labels were ruled inadmissible, because they did not aid the jury "in determining sexual dangerousness." Id. This holding, however, is limited to the previous risk category labels, and "[b]oth the Static-99R score and the corresponding percentage reflecting the risk of sexual offense in qualified examiners' testimony continue to be admissible." Id. at 341.

Here, the Commonwealth submitted in evidence separate reports written by two different qualified examiners, Dr. Kaitlyn Peretti and Dr. Gregg Belle. In each of the qualified

---

[3] The revised labels now categorize a defendant as having a "very low," "below average," "average," "above average," or "well above average" risk of sexual reoffense depending on how the defendant's risk of reoffense compares to that of other male sexual offenders.

4

examiners' reports, the examiners scored the defendant as a six when applying the Static-99R, and each noted that this placed the defendant in the "well above average" category for risk of reoffense. An October 27, 2021 report of a sexually dangerous person consultation that classified the defendant as presenting a well above average risk of reoffense was also entered in evidence. In the judge's memorandum of decision, he noted that the defendant was in the "Level IVb risk category, well above the Average Risk Level for being charged or convicted of a future sexual offense." In support of the defendant's motion for a new trial, the defendant's trial counsel stated in an affidavit that "it has been [his] usual and customary practice to seek to have the Static-99R risk category labels . . . redacted from all QE and expert reports," and "[t]o the extent that evidence of these risk labels was admitted into evidence it was not the result of a strategic decision."[4]

The defendant contends, inter alia, that trial counsel rendered ineffective assistance of counsel by failing to redact the defendant's updated Static-99R risk category labels, highlighting that the judge referred to the defendant's risk category labels in his decision. We disagree.

---

[4] While not pertinent to the judge's ruling, he noted that defense counsel is "very experienced, particularly in sexual dangerousness cases."

Unlike the previous Static-99R risk category labels, the new risk category labels have not been found inadmissible. See George, 477 Mass. at 340. By framing the new labels in terms of how likely a male sex offender is to reoffend in comparison to other male sex offenders, these labels are now related by an objective measure to the Static-99R score and the corresponding percentage reflecting a defendant's risk of sexual offense. See id. Accordingly, given the totality of the circumstances it was not ineffective to fail to move for their exclusion. See Commonwealth v. Heywood, 484 Mass. 43, 49 (2020) ("because there was no error, trial counsel was not ineffective for failing to object"); Commonwealth v. Lessieur, 472 Mass. 317, 327 (2015) (no ineffective assistance where counsel did not object to properly admitted evidence).

What is more, the judge only referred to the defendant's risk category label once in his memorandum of decision, and that reference was contextualized by the Static-99R score and percentage reflecting the defendant's risk of reoffense. Again, as noted supra, both the score and percentage remain admissible. See George, 477 Mass. at 341. And importantly, as the judge noted in his denial of the defendant's motion for a new trial, the qualified experts "did not rely exclusively on the Static-99R and its risk categories in forming their opinions." The experts considered dynamic risk factors as well as static ones,

6

including "the respondent's sexual crimes, his background in terms of family life, education, employment, sexual history, institutional conduct, treatment participation, health, age and current sex drive." Even if the admission of the defendant's "well above average" risk category label were erroneous, its admission did not prejudice the defendant nor deny the defendant a substantial ground of defense because the judge's mention of the risk category label was buttressed by substantial admissible evidence. See Saferian, 366 Mass. at 96.

2. Failure to call expert witness. The defendant was provided with funds to engage Dr. Leonard Bard as an expert witness. But trial counsel elected not to call him as a witness at trial. This was largely because the defendant refused to be interviewed by Dr. Bard, and as a result the doctor could not opine, contrary to the Commonwealth's experts, that the defendant was not a sexually dangerous person. As a result, trial counsel also did not request a written report from Dr. Bard.[5] The defendant contends trial counsel rendered ineffective assistance by not calling Dr. Bard to testify. We disagree.

To be sure, portions of Dr. Bard's findings and conclusions would have been favorable to the defendant. For instance, Dr.

_____

[5] In an affidavit, trial counsel stated, "Dr. Bard told me that, without interviewing Mr. Austin, he could not say that Mr. Austin was not a Sexually Dangerous Person."

7

Bard did state in his affidavit that he would have been able to testify that, inter alia, the defendant was compliant with his medication regimen for treating his mental health for one year prior to trial, had not received any disciplinary reports during that period, and had refrained from substance use. Nevertheless, he also stated that it was "unclear" that the changes he noted in the defendant's behavior "would be sufficient for an independent examiner to opine that Mr. Austin was not sexually dangerous," because "other factors would need to be assessed as well."

Considering that the defendant refused to be interviewed, and as a result Dr. Bard could not testify that the defendant was not a sexually dangerous person, it was not manifestly unreasonable for defense counsel to elect not to call Dr. Bard as a witness. See Acevedo, 446 Mass. at 442. We agree with the judge, as he noted in his memorandum and order denying the defendant's motion for a new trial, that "[c]alling Dr. Bard to testify, knowing that he would not be able to give a supportive opinion regarding the ultimate issue, would be awkward at best, as his failure to refute the opinions of the two Commonwealth's experts would be deafening." As such, it was not unreasonable for trial counsel to present a defense through examination of the Commonwealth's witnesses and documentary evidence, rather

8

than call a witness who would, by omission, highlight glaring weaknesses in the defense. See id.

Indeed, as the judge noted in his denial of the defendant's motion, the Commonwealth's qualified examiners testified to the same helpful evidence to the defendant that "Dr. Bard would have offered if he had testified." See Esteraz, petitioner, 90 Mass. App. Ct. 330, 336 (2016) ("The failure to present certain evidence does not deprive a petitioner of a substantial ground of defense where trial counsel is able to develop the issue with other, comparable evidence"). Dr. Peretti, one of the Commonwealth's qualified examiners, testified that the defendant actively participates in mental health treatment, developed skills to manage his mental health symptoms, and is compliant with his mental health medication prescription regimen. She further noted that the defendant had had no disciplinary reports in the time he was civilly committed at the Massachusetts Treatment Center. Also, during cross-examination, Dr. Peretti reemphasized that these factors contributed to the defendant's present stability. And similarly, during cross-examination of the Commonwealth's other qualified examiner, Dr. Belle acknowledged that the defendant's poor disciplinary record during his term of incarceration could very well be attributable to his mental illness. Although the defendant did not prevail

in his trial, we cannot say that trial counsel's strategy was manifestly unreasonable.  See Acevedo, 446 Mass. at 442.

Because we do not view trial counsel's performance as "falling measurably below that which might be expected from an ordinarily fallible lawyer," we affirm the judgment.  Saferian, 366 Mass. at 96.  Likewise, it was not an abuse of discretion to deny the defendant's motion for a new trial.  See Commonwealth v. Forte, 469 Mass. 469, 488 (2014).

Judgment affirmed.

Order dated August 1, 2024, denying motion for a new trial affirmed.

By the Court (Desmond, Hershfang & Brennan, JJ.[6]),

Clerk

Entered:  July 22, 2026.

---

[6] The panelists are listed in order of seniority.